S96G0583. BROWNING et al. v. GASTER LUMBER COMPANY.
(475 SE2d 576)

HUNSTEIN, Justice.

Gaster Lumber Company filed a materialman's lien on property owned by the Brownings after the contractor hired by the Brownings failed to pay for lumber Gaster supplied to the construction project on the property. The contractor abandoned the project and the Brownings completed it, expending an amount which was $26,629 less than the contract price for the project. Although the trial court found the Brownings had proven that all of their payments to the contractor were made before Gaster's lien was filed and that at least $41,000 of the pre-lien payments ultimately reached other materialmen and laborers who worked on the project and thus had inchoate claims on the property, the Brownings failed to prove *when* the contractor disbursed the $41,000, i.e., whether the $41,000 was applied before or after Gaster's lien was filed. The trial court held that because the aggregate amount of liens[1] exceeded the contract price of the improvements made, the Brownings had a complete defense to Gaster's lien under OCGA § 44-14-361.1 (e) and discharged the lien. The Court of Appeals reversed, holding that the defense in subsection (e) requires proof by the owner that the sums paid to the contractor were disbursed to the other materialmen and laborers before the filing of Gaster's lien. *Gaster Lumber Co. v. Browning,* 219 Ga. App. 435 (1) (465 SE2d 524) (1995). We granted the writ of certiorari to consider whether an owner is entitled under OCGA § 44-14-361.1 to

---

[1] The trial court's calculation of the aggregate amount of liens included the Brownings' post-abandonment expenditures plus the $41,000 paid on inchoate claims on the property.

claim credit for those sums the owner pays the contractor before the lien is filed, which sums are shown to have been disbursed post-lien to other potential lien claimants. Based on our review of the statutory and case law on materialman's liens, we conclude that an owner has a defense to an action to foreclose a materialman's lien only by showing that the contractor has disbursed sums received for the project at a time when no materialman or laborer had filed for record any claim of lien. Therefore, we affirm the Court of Appeals.

In construing the language in OCGA § 44-14-361.1, we recognize that because materialman's liens are in derogation of the common law, statutes involving such liens must be strictly construed in favor of the property owner and against the materialman. *Palmer v. Duncan Wholesale*, 262 Ga. 28, 30 (1) (413 SE2d 437) (1992); *Green v. Farrar Lumber Co.*, 119 Ga. 30, 32-33 (46 SE 62) (1903). We must also recognize the purpose for materialman's lien statutes, to-wit, the need to protect the construction industry and those in its employ. *Tucker Door &c. Corp. v. Fifteenth Street Co.*, 235 Ga. 727, 729 (221 SE2d 433) (1975).

> Labor and materials contractors are in a particularly vulnerable position. Their credit risks are not as diffused as those of other creditors. They extend a bigger block of credit, they have more riding on one transaction, and they have more people vitally dependent upon eventual payment. They have much more to lose in the event of default. There must be some procedure for the interim protection of contractors in this situation.

(Punctuation omitted.) Id. See also *Green v. Farrar Lumber Co.*, supra, one of the first cases to construe the materialman's lien statute, holding that its purpose is "to protect materialmen and laborers for work done and material furnished to contractors who fail or refuse to pay." Id. at 33.

Turning to the specific language in the statute, OCGA § 44-14-361.1 (a) (4) provides in pertinent part that

> the owner of the real estate improved, who has paid the agreed price or any part of same, may set up the payment in any action brought and prove by competent and relevant evidence that *the payments were applied as provided by law*.

(Emphasis supplied.) Nothing in subsection (a) (4) speaks in terms of when the owner makes the payments; instead, the language used by the Legislature addresses when payments are "applied," and thereby focuses not on the initial making of the payments but on the final receipt of those payments by the parties entitled to receive them.

Furthermore, the language requires the payments that are applied to be "as provided by law," which we construe as referencing the strict hierarchy established by the Legislature for the ranking of liens. See OCGA § 44-14-361.1 (b) (date of filing of lien); OCGA § 44-14-361.1 (c) (rank based on nature of lien, e.g., taxes, laborers, landlords). There is no question but that under this statutory scheme, a lien properly filed and recorded is superior to any inchoate lien claim.

Based on the plain language in the statute, we construe the phrase "applied as provided by law" in OCGA § 44-14-361.1 (a) (4) as conditioning the property owner's defense upon proof that the payments were ultimately disbursed to materialmen and laborers in proper order according to the hierarchical rank set forth in subsections (b) and (c) of the statute. Payments that are made by the owner before any lien is filed and recorded but which are not applied until after a lien is filed and recorded may not be set up in defense of a foreclosure action on such lien unless such payments were made to parties with superior-ranking lien claims. Accordingly, we conclude that an owner is not entitled to credit under OCGA § 44-14-361.1 (a) (4) where pre-lien payments to the contractor are disbursed post-lien by the contractor in payment of inferior-ranked, inchoate claims of materialmen and laborers.

Nothing in *Green v. Farrar Lumber Co.*, supra, conflicts with our interpretation of OCGA § 44-14-361.1 (a) (4).[2] *Green v. Farrar Lumber Co.* stressed that an owner who can show that "all amounts paid by him to the contractor have been appropriated to the payment of valid and just claims of materialmen and laborers [will] not be held liable for any additional sum." Id. at 33. The case further provides:

If *at the time of the payment to the contractor* no materialman or laborer has filed and recorded his lien, the *payment to any of the materialmen or laborers* having claims of lien which might be perfected by the filing and recording of the liens *may be made by the contractor*; and if the money of the owner is used for this purpose, he will not be required to pay this amount again to any materialman or laborer. . . . *When none have filed and recorded liens*, but all have claims of lien, *the payment by the contractor, out of money furnished him by the owner, of any such claims will be sufficient to discharge the liability of the owner to any other* . . . . If any materialman or laborer *has* filed his lien, then payment to

---

[2] Although *Green* construes the language in the predecessor to subsection (e) of OCGA § 44-14-361.1, its holding has been applied in cases proceeding under the subsequently-enacted language in subsection (a) (4). See, e.g., *Whatley v. The Alto Corp.*, 211 Ga. 718 (1) (88 SE2d 398) (1955); *Ingram v. Barfield*, 80 Ga. App. 276 (1) (55 SE2d 725) (1949).

others in preference to him would be at the peril of the owner. . . . [W]here claims of liens have been duly recorded, payments made to other materialmen and laborers *with the money of the owner* will be no reply to the claims of such materialmen or laborers so recording their liens.

(Emphasis supplied.) Id. at 33-34.

Although *Green v. Farrar Lumber Co.* provides that pre-lien payments by owner and contractor can be used in defense of a lien and post-lien payments by owner and contractor cannot be so used, the case does not support an argument that the only relevant payment for purposes of the subsection (a) (4) defense is the owner's pre-lien payment to the contractor, regardless of the time of the contractor's payment to others. Rather, the stress in *Green v. Farrar Lumber Co.* on the time of the payment by the contractor is consistent with our construction of the subsection and the requirement that the disbursement of the owner's payments to other materialmen and laborers occur before the filing of any liens.

Although this Court previously has not been called upon to address directly the issue presented here, the holding in *Jones Brick Co. v. Seagler Brothers*, 146 Ga. 19 (90 SE 473) (1916) indicated the direction we here endorse. In that case, the Court held that where a property owner has paid the full contract price to the contractor and the contractor, in turn, has applied the whole amount received to the payment of valid claims for material and labor on the project, "the owner will be protected against claims of lien for material furnished to the contractor, filed subsequently to payment *and* application of the full contract price as above indicated." (Emphasis supplied.) The Court of Appeals, however, has explicitly recognized that the relevant time for the defense under OCGA § 44-14-361.1 (a) (4) is the time the contractor disburses payment to other materialmen, not the time the owner pays the contractor. In *Short & Paulk Supply Co. v. Dykes*, 120 Ga. App. 639 (171 SE2d 782) (1969), the Court of Appeals, citing *Green v. Farrar Lumber Co.*, and *Jones Brick Co.*, supra, recognized that

[t]he owner may establish a complete defense to an action to foreclose the liens by showing that the full construction contract price has been paid to the contractor and that the contractor, in turn, has disbursed the sum or sums representing the construction contract price which he received from the owner to the payment of valid claims of materialmen and laborers at a time when they were entitled under the law to file and record their claims for liens, *and that the payments were made at a time when no materialman or laborer had*

*filed for record any claim of lien.* It is the owner's responsibility to see to it that the payments which he makes on the construction contract price are properly disbursed by the contractor to those having valid claims for labor and materials, and in establishing his defense to the foreclosure he has the burden of showing that this was done. [*Green v. Farrar Lumber Co.*, supra and cits.] He is protected as against claims for liens which may have been filed and recorded subsequently to the full payment *and* proper disbursement of the contract price. *Jones Brick Co.*, [supra].

(Emphasis supplied.) *Short & Paulk Supply Co. v. Dykes*, supra at 642-643 (2). Hence, full payment by the owner to the contractor of the contract price

"will afford the owner a perfect defense to an action by a supplier of materials for improvement of the property to foreclose his lien if the contractor has disbursed the funds to holders of valid claims for labor and materials used in making the improvement *at a time* when no claim for lien had been filed or recorded." [Cit.]

(Emphasis supplied.) *Sanford v. Hodges Builders Supply*, 166 Ga. App. 86, 88 (3) (303 SE2d 280) (1983).[3]

Based on our analysis of the statutory language and the case law interpreting it, we conclude that it is the responsibility of the owner to see that the contractor disburses the money received in a proper manner at a time *before* liens are filed and that the owner cannot avail himself of the defense in OCGA § 44-14-361.1 (a) (4) unless he can prove that the payments made to the contractor " 'were "properly appropriated," i.e., paid before the filing of the lien.' " *Gaster Lumber Co. v. Browning*, supra at 437 (1). While we recognize this is a heavy burden, the property owner is by no means defenseless, given his bargaining position in selecting a contractor and his ability to have included in the construction contract those provisions that would condition the contractor's receipt of payments at various stages of the project on the contractor tendering lien waivers or documentary proof of payment from the materialmen and laborers used in the

---

[3] While these cases involved contractors who completed the job and were fully paid by the property owners, rather than, as here, a case where the project was abandoned by the contractor and completed by the owner, the language in these cases is nevertheless applicable here, given that a property owner in an abandonment case is under the same evidentiary burden of proving the proper disbursement of payments in those instances where the post-abandonment expenditures do not exceed the contract price. *Prince v. Neal-Millard Co.*, 124 Ga. 884, 894 (2), (3) (53 SE 761) (1906).

project.

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 9, 1996.

*Lee, Black, Scheer & Hart, Steven E. Scheer, Christopher L. Rouse,* for appellants.

*Kent, Worsham & Smart, Hugh M. Worsham, Jr.,* for appellee.