A97A1131. PADGETT et al. v. CITY OF MOULTRIE et al.
(494 SE2d 299)

SMITH, Judge.

This case involves an issue of first impression construing the Commercial Real Estate Broker Lien Act, OCGA § 44-14-600 et seq., enacted in 1993. Ga. L. 1993, p. 1490. Appellants Mary L. Padgett and Pineapple, Inc. d/b/a Southeast Realty, a corporation owned by Padgett (collectively "Padgett"), filed an action to foreclose a broker's lien on property owned by defendant Cambridge Health Care, Inc. ("Cambridge").[1] Appellees City of Moultrie and Empire Financial Services hold security deeds on the property for loans made to Cambridge. The City and Empire moved for summary judgment, contending that Padgett did not have a valid and enforceable broker's lien on the property. Padgett likewise moved for summary judgment, contending the lien was valid and enforceable and had priority over the liens of the City and Empire.

   The trial court denied summary judgment to Padgett and granted summary judgment to the City and Empire. When we granted Padgett's application for interlocutory appeal of the denial of

---

[1] Cambridge is a defendant below but not a named party to this appeal.

her motion for summary judgment, she also directly appealed the grant of summary judgment to the lenders. *Southeast Ceramics v. Klem*, 246 Ga. 294, 295 (271 SE2d 199) (1980). We agree that the trial court erred in both instances and reverse.

The pertinent facts are not in dispute. Padgett entered into an agreement with Cambridge Health Care Services to facilitate the purchase of the old Hotel Colquitt in downtown Moultrie by Cambridge for conversion into a personal care home. Padgett provided services to Cambridge, including the negotiation and arrangement of the purchase of the hotel property, obtaining financing both from Empire and from the City, site analysis, market feasibility studies, assisting the architect and contractor in renovation of the property, and managing the property after closing. In return, Cambridge agreed that Padgett would receive $100,000 for "real estate and consulting services." Padgett introduced several letters memorializing this agreement, as well as the testimony of the chief executive officer of Cambridge, Bryson F. Hill, Jr. Padgett also received a real estate commission of five percent of the purchase price from the seller of the property, with the contract providing that Padgett's company had acted as agent for the purchaser and not for the seller. No dispute exists that the five percent commission on the sale of the underlying realty was paid by the seller and was entirely separate from her broker's agreement with the purchaser. Hill agreed that the seller's commission was unrelated to the agreement between Cambridge and Padgett.

At closing, the available funds were insufficient to pay all of Padgett's commission and fee. Part of the fee was paid at closing, and a new written "commission agreement" was executed by Cambridge for $55,420, the balance owed to Padgett. When this sum was not paid, Padgett filed a lien on the property and later filed this action to foreclose the lien.

1. We must first determine whether Padgett's lien is valid and enforceable under the terms of the relevant statutes, OCGA § 44-14-600 et seq. Padgett contends that her services as a licensed real estate broker were "inextricably intertwined" with her services in obtaining financing, marketing the personal care home, assisting in the renovation of the hotel, and managing the property during the construction and loan phase. The City and Empire contend that some of the services Padgett provided were not services required to be provided by a broker as defined under OCGA § 43-40-1 and were not directly related to the actual sale of the real estate. For these reasons, they contend that a portion of Padgett's services were not "licensed services" and that as a result none of Padgett's claim is lienable under the statute. This narrow interpretation is not supportable under the broad language of the statute creating the lien.

OCGA § 44-14-602 provides: "(a) Any real estate broker who is not an employee or independent contractor of another real estate broker shall have a lien, in the amount of the compensation agreed upon by and between the broker and the landlord or seller or other client or customer, upon commercial real estate or any interest in commercial real estate:

"(1) Arising out of a listing agreement or any other agreement for the management, sale, or lease of or otherwise conveying any interest in the commercial real estate as evidenced by a writing signed by the owner or its expressly authorized agent and with written notice to the party whose property may be liened, if different from the parties to the agreement;

"(2) As to which the broker or broker's employees or independent contractors have provided licensed services that result in the procuring of a person or entity ready, willing, and able to enter and who actually enters into a purchase or lease or otherwise accepts a conveyance of the commercial real estate or any interest in the commercial real estate upon terms acceptable to the owner as evidenced by an agreement or conveyance signed by the owner or its expressly authorized agent and with written notice to the party whose property may be liened, if different from the parties to the agreement; or

"(3) When a broker having a written agreement with a prospective buyer or tenant to represent the buyer or tenant as to the purchase, lease, or other conveyance of commercial real estate becomes entitled to compensation and with written notice to the party whose property may be liened, if different from the parties to the agreement."

In construing a lien statute, we must bear in mind the general rule that such statutes are in derogation of the common law and are strictly construed in favor of the property owner and against the lien claimant. *Southern Gen. Ins. Co. v. Auto Transformation,* 206 Ga. App. 243, 244-245 (1) (424 SE2d 883) (1992) (automobile mechanic's lien); *Browning v. Gaster Lumber Co.,* 267 Ga. 72, 73 (475 SE2d 576) (1996) (materialman's lien). But we must also recognize the purpose for lien statutes: the need to protect the claimant's profession or business. Id.

The general rules of statutory construction are also applicable here. We must give plain and unambiguous language its plain and ordinary meaning, except for words which are terms of art or have a particular meaning in a specific context. OCGA § 1-3-1 (b). We must also seek to make all parts of the statute harmonize and to give a sensible and intelligent effect to each part, presuming that the legislature intended all parts to have meaning. *City of Buchanan v. Pope,* 222 Ga. App. 716, 717 (1) (476 SE2d 53) (1996).

Construing the statute in this manner, we conclude that a com-

mercial real estate broker's lien is not limited to those services licensed under OCGA § 43-40-1. The statute is not limited to "licensed services" throughout. That term appears only in subsection (a) (2). This omission "invites the application of the venerable principle of statutory construction expressio unius est exclusio alterius: the express mention of one thing implies the exclusion of another; or the similar maxim more usually applied to statutes, expressum facit cessare tacitum, which means that if some things (of many) are expressly mentioned, the inference is stronger that those omitted are intended to be excluded than if none at all had been mentioned. [Cits.] The omission of any such reference from [the Code subsection] must be regarded as deliberate." (Punctuation and emphasis omitted.) *Dept. of Human Resources v. Hutchinson*, 217 Ga. App. 70, 72 (456 SE2d 642) (1995) (express mention of "state officer or employee" in two subsections of statute and omission from third).

Moreover, the statute includes within the definition of lienable contracts a number of items not within the statutory definition of licensed services. For example, OCGA § 44-14-602 (a) (1) permits a lien not only for compensation "[a]rising out of a listing agreement" but also "*any other agreement* for the *management*, sale, or lease of or otherwise conveying any interest in the commercial real estate." (Emphasis supplied.) Id. But OCGA § 43-40-1 was not amended until 1995 to include "property management services" within the definition of licensed activities. OCGA § 43-40-1 (2) (H); Ga. L. 1995, p. 1216. We conclude from this internal evidence that the General Assembly did not intend to limit a commercial real estate broker's lien strictly to licensed services.

This conclusion is also compatible with the law defining those services for which a broker must be licensed. The law provides that no unlicensed person may provide certain enumerated services connected with real estate, even if the services required to be licensed form only part of the entire transaction: "Any person who, directly or indirectly, with the intention or upon the promise of receiving any valuable consideration, offers, attempts, or agrees to perform, or performs, any single act defined in paragraph (2) of Code Section 43-40-1, *whether as a part of a transaction or as an entire transaction*, shall be deemed a licensee within the meaning of this chapter. The commission of a single such act by a person who is required to be licensed under this chapter but who is not so licensed shall constitute a violation of this chapter." (Emphasis supplied.) OCGA § 43-40-30 (a).

Padgett therefore was required to be a licensed broker to facilitate and manage the purchase and conversion of the property, even if some of the activities she undertook in completing the entire transac-

tion did not at the time require a broker's license.[2] Under the broad language of the lien statute, it is unnecessary and unworkable to distinguish "licensed" and "nonlicensed" services under a contract agreed upon between the broker and client; every lien would be disputed. The General Assembly apparently recognized this difficulty when it provided in OCGA § 44-14-602 that property management was a lienable service, although not at that time a licensed service, and omitted the term "licensed services" from subsections (1) and (3) of the Code section. We conclude, therefore, that a commercial real estate broker's lien under OCGA § 44-14-602 is not limited to licensed services as defined under OCGA § 43-40-1, so long as it otherwise complies with the requirements of the lien statute.

We also find that the services provided by Padgett may be secured by lien. First, we note that the City and Empire incorrectly seek to treat the three subsections of OCGA § 44-14-602 (a) as conjunctive rather than disjunctive. But the Supreme Court of Georgia has clearly held that a statutory list divided by semicolons and concluding with "or" is disjunctive rather than conjunctive. *Flaherty v. Poythress*, 263 Ga. 178, 180 (432 SE2d 103) (1993). In order to come within the ambit of the lien statute, Padgett need show only that the agreement with Cambridge falls within one of the three subsections of the statute.

No dispute exists as to the amount of the lien; it is established by the statute "in the amount of the compensation agreed upon by and between the broker and . . . client or customer." OCGA § 44-14-602 (a). Padgett, the broker, and Cambridge, the client, do not dispute the amount of compensation remaining under their agreement. Nor is there any dispute that Padgett had "a written agreement with a prospective buyer," Cambridge, "to represent the buyer . . . as to the purchase, lease, or other conveyance of commercial real estate" under OCGA § 44-14-602 (a) (3), although, as noted above, Padgett provided other services to Cambridge under that agreement. It is also undisputed that Padgett in fact "provided licensed services that result[ed] in the procuring of a person or entity ready, willing, and able to enter and who actually enter[ed] into a purchase or lease or otherwise accept[ed] a conveyance of the commercial real estate" within the meaning of OCGA § 44-14-602 (a) (2). Finally, Padgett's agreement to supervise and assist in the conversion of the hotel to a personal care home can be construed as "any other agreement for the management

---

[2] We note that most real estate brokers in the ordinary course of their business provide services that arguably do not require a broker's license, such as market analysis, certain types of advertising, and general customer relations. See, e.g., OCGA § 43-40-1 (2) (E) (advertising fees excepted from licensed services in promoting sale of real estate through listing or referral).

. . . of . . . commercial real estate" under OCGA § 44-14-602 (a) (1).

2. Having concluded that Padgett is entitled to a lien on the property at issue, we must address the respective priority of the liens of Padgett, Empire, and the City. Empire and the City rely on OCGA § 44-14-603, which provides: "Prior recorded liens and liens for ad valorem taxes shall have priority over a broker's lien." But this case presents the additional complicating factor of an agreement in which Empire agreed to subordinate part of its debt to the later-filed lien of the City.

Empire's deed to secure debt was recorded in the Colquitt County Superior Court on May 14, 1993. Padgett filed her lien on April 5, 1994, and on the same date, she hand-delivered a copy of the lien to the City Manager and to a representative of the Moultrie National Bank, which held a 100 percent participation interest in Empire's loan. On April 6, Padgett mailed a copy of the lien to Cambridge and Empire. Empire does not contend that it did not receive a copy of the lien. On May 9, 1994, the City recorded its deed to secure debt dated April 6, 1994.[3] Also on May 9, Empire recorded a subordination agreement dated April 11, 1994. That subordination agreement references the deed to secure debt recorded May 14, 1993 and provides that Empire and Moultrie National Bank "subordinate and make subject the lien of the above described security deed on the property described therein to the first $120,000.00 of the $195,000.00 lien and obligations of that certain security deed from Cambridge Health Care, Inc. to the City of Moultrie."

The priority of these three liens is controlled by the decision of *Old Stone Mtg. &c. Trust v. New Georgia Plumbing,* 140 Ga. App. 686 (231 SE2d 785) (1976), aff'd, 239 Ga. 345 (236 SE2d 592) (1977). "One who subordinates a first lien to a third lien makes his lien inferior to both the second and the third liens. Thus, where a first mortgagee subordinated his interest to a second mortgagee, the prior mortgage was necessarily inferior to an intervening materialman's lien: It cannot be questioned that things equal to the same thing are equal to each other, and it is equally true that if B is inferior to A and C is inferior to B, C is also necessarily inferior to A. This rule is especially applicable where, as here, the grantees of the prior security deed had actual knowledge of the intervening materialman's claim of lien." (Citations and punctuation omitted.) *Old Stone,* supra, 140 Ga. App. at 690 (2). At the time the subordination agreement was recorded, Empire had knowledge of Padgett's lien both through its earlier recordation and receipt of a copy of the lien.[4]

---

[3] Empire incorrectly asserts that the City filed its deed to secure debt on April 6, 1994, but cites no record authority for that assertion.

[4] We note that actual knowledge was an issue in *Old Stone* because the materialman's

Empire contends that the rule established in *Old Stone* is inapplicable here because this subordination agreement applies to only a portion of its total loan amount. But as the Supreme Court of Georgia observed in its affirmance of the Court of Appeals, refusal to apply the subordination to the intervening lienholder would operate "to the detriment of the intervening lienholder known to the parties" and "destroy the legal rights of the intervening statutory lienholder." *Old Stone*, supra, 239 Ga. at 346. The subordination of Empire's rights to those of the City without effecting a subordination to Padgett's intervening lien would operate to Padgett's detriment, to the extent of that subordination. Moreover, Padgett expressly states that she claims superior lien rights only over the $120,000 which Empire has already subordinated to the City of Moultrie. Empire's priority therefore changes only as to that part of its claim which has been subordinated. Padgett's lien has priority over that portion of Empire's claim which was subordinated to the City of Moultrie after her lien was recorded.

*Judgment reversed. McMurray, P. J., and Beasley, J., concur.*

DECIDED NOVEMBER 20, 1997 —

*Kirbo, McCalley & Forehand, William C. McCalley*, for appellants.

*Keith F. Allen, Solicitor, Moore & Mangum, Charles E. Moore, Young, Thagard, Hoffman, Scott & Smith, John H. Smith, Jr., Whelchel, Whelchel & Carlton, James C. Whelchel, Hoyt H. Whelchel, Jr.*, for appellees.

---

lien was not recorded until after the second loan and subordination agreement, but under the law then applicable to materialmen's liens the lenders were charged with actual knowledge of the claim of lien through their knowledge that the materialman had performed work and was demanding payment. *Old Stone*, supra, 140 Ga. App. at 688. That circumstance is not present here, because Padgett's claim of lien was recorded before the second deed to secure debt and subordination agreement.