A98A1499. INTEGON INDEMNITY CORPORATION v. HENRY MEDICAL CENTER, INC.
(508 SE2d 476)

BEASLEY, Judge.

Integon Indemnity Corporation's interlocutory appeal challenges the trial court's denial of its motion for summary judgment in a direct suit against it by Henry Medical Center, Inc. to foreclose on a medical lien and alleging fraud.

On April 21, 1995, Lillie Mae Slaughter was driving an automobile which collided with a car driven by Katherine Helms. Helms' Integon policy had a liability limit of $15,000 per person and $30,000 per accident for bodily injury. Slaughter and her passenger were injured and were treated at Henry Medical Center. On May 3, the hospital filed a medical lien in Henry County which included the $10,978.71 expenses incurred by Slaughter.

Slaughter and the passenger gave notice to Integon of intent to pursue claims against Helms for property damage and personal injuries. At some point, the passenger's hospital bills were paid and that claim resolved. Integon investigated and settled Slaughter's claims for $15,000 in consideration for which, on September 15, 1995,

Slaughter executed a release of all claims against Integon and Helms. Integon delivered the settlement payment to Slaughter's attorney, who has been added as a party. Slaughter's hospital bills were never paid.

Henry Medical received verbal notice of "full and final settlement" of Slaughter's claim against Helms and Integon as early as February 13, 1996, and written notice on March 7. The hospital filed suit to foreclose on the lien on November 27. It later amended its complaint to allege Integon and Slaughter conspired to settle the case without the hospital's knowledge and consent.

1. Integon contends the hospital is not authorized to proceed against it under the medical lien statutes. OCGA § 44-14-470 et seq. provide that hospitals and nursing homes shall have and be able to enforce liens "upon any and all causes of action accruing to the person to whom the care was furnished or to the legal representative of such person on account of the injuries giving rise to the causes of action and which necessitated the hospital or nursing home care, subject, however, to any attorney's lien."[1]

(a) The initial question is whether Slaughter had a cause of action against Integon arising out of her automobile accident with Integon's insured Katherine Helms.[2]

In Georgia, "[t]he general rule is that because there is no privity of contract, a party may not bring a direct action against the liability insurer of the party who allegedly caused the damage unless there is an unsatisfied judgment against the insured or it is specifically permitted either by statute or a provision in the policy."[3] Other exceptions may exist where the insured's liability to the injured party "has been otherwise fixed."[4]

First, no evidence has been presented that Slaughter has an unsatisfied judgment against the insured, alleged tortfeasor Helms. Second, Helms' policy provides: "under [the liability coverage section], no legal action may be brought against us until: 1. we agree in writing that the insured has an obligation to pay; or 2. the amount of that obligation has been finally determined by judgment after trial.

---

[1] OCGA § 44-14-470 (b).

[2] "A 'cause of action' is generally referred to as the right to sue for a thing done or omitted to be done which causes a grievance for which the law gives a remedy. The 'cause' is the right of the party to bring the suit, and the 'action' is the means of enforcing the right. In Georgia, 'cause of action' has been defined as 'all the facts which together constitute the plaintiff's right to maintain the action.'" (Citations and emphasis omitted.) *Winters v. Pund*, 179 Ga. App. 349, 352 (346 SE2d 124) (1986), overruled on other grounds, *Wickliffe v. Wickliffe Co.*, 227 Ga. App. 432 (489 SE2d 153) (1997).

[3] *Hartford Ins. Co. v. Henderson & Son, Inc.*, 258 Ga. 493, 494 (371 SE2d 401) (1988), citing *Seaboard Coast Line R. Co. v. Freight Delivery Svc.*, 133 Ga. App. 92, 95 (3) (210 SE2d 42) (1974). See also *McKin v. Gilbert*, 208 Ga. App. 788 (432 SE2d 233) (1993).

[4] *Seaboard Coast Line R. Co.*, supra.

No person or organization has any right under this policy to bring us into any action to determine the liability of the insured." This provision does not permit a direct action by the person injured, and the hospital refers us to no other provision in the policy or, thirdly, to any statute permitting a direct action against the insurer.

The exception, when "liability has been otherwise fixed," provides no open door to Henry Medical because, "inasmuch as our lien laws and procedures are in derogation of the common law, they must be construed strictly against the creditor and in favor of the debtor. [Cit.]"[5] Neither *Seaboard Coast Line R. Co. v. Freight Delivery Svc.*[6] nor the cases it cites for the general rule identify any instances of "otherwise fixed" liability.[7] Whatever those are, this is not one of them. A settlement agreement can be a situation where the liability is otherwise fixed.[8] Here the settlement agreement was fully performed, and Integon has already paid the settlement amount. Therefore, Slaughter has no cause of action against Integon on which the hospital can place a lien. Without such, the hospital cannot foreclose. Integon is entitled to summary judgment on the lien foreclosure count.

Henry Medical's reliance on *Hosp. Auth. &c. of Augusta v. Boyd*[9] and *Macon-Bibb County Hosp. Auth. v. Nat. Union Fire Ins. Co.*[10] is unfounded. In *Boyd*, the Court never addressed whether the insurance company had been properly dismissed from a suit by the hospital to foreclose a lien.[11] *Macon-Bibb County Hosp.*, a non-binding federal case, addressed only the narrow issue of whether a hospital's late filing of the medical lien affidavit would defeat the lien. The issue in Henry Medical's case was not addressed.[12]

(b) A second provision of the medical lien statutes supports the

---

[5] *Brockett Road Apts. v. Ga.-Pacific Corp.*, 138 Ga. App. 198, 199 (225 SE2d 771) (1976) (applying rule to materialman's lien); *Southern Gen. Ins. Co. v. Auto Transformation*, 206 Ga. App. 243, 244-245 (1) (424 SE2d 883) (1992) (automobile mechanic's lien); *Padgett v. City of Moultrie*, 229 Ga. App. 500, 502 (1) (494 SE2d 299) (1997) (broker's lien); *Peoples v. Consolidated Freightways*, 226 Ga. App. 265, 266 (1) (486 SE2d 604) (1997) (attorney's lien).

[6] *Supra.*

[7] See *Arnold v. Walton*, 205 Ga. 606, 612 (2) (54 SE2d 424) (1949); *Hodges v. Ocean Accident &c. Corp.*, 66 Ga. App. 431 (1) (18 SE2d 28) (1941). *Arnold* prohibited a direct action to fix the liability of the insured. *Hodges* allowed a direct garnishment action because the policy insured directly against liability; it was not an indemnity policy.

[8] *Topa Ins. Co. v. Acree*, 209 Ga. App. 234 (433 SE2d 312) (1993) (injured party allowed to recover against tortfeasor's insurer where insurer orally agreed to pay but refused to perform).

[9] 96 Ga. App. 705 (101 SE2d 207) (1957).

[10] 793 FSupp. 321 (M.D. Ga. 1992).

[11] *Boyd*, supra. See also *Dawson v. Hosp. Auth. of Augusta*, 98 Ga. App. 792 (106 SE2d 807) (1958) (second appeal in same case reveals that insurance company was dismissed from the case; no explanation given).

[12] *Macon-Bibb County Hosp. Auth.*, supra.

conclusion that Henry Medical may not proceed against Integon. OCGA § 44-14-473 makes clear that in the event a payment is made in violation of the lien, the lienholder may enforce the lien by an action "against the person, firm, or corporation liable for the damages." The legislature could have added the insurer of the tortfeasor to the provision, but it did not. Additionally, Integon is not liable for Slaughter's damages, neither under the policy nor by statute or agreement. The hospital had a remedy in that it could have foreclosed against Helms, but not against her insurer.[13]

2. Even if Integon could be sued under the statute, Henry Medical missed the deadline to sue. Any action to enforce the lien must be commenced within one year "after the date the liability is finally determined by a settlement, by a release, by a covenant not to bring an action, or by the judgment of a court of competent jurisdiction."[14] Under the plain meaning of the statute Henry Medical was too late because Integon and Helms settled with Slaughter more than one year before the hospital filed this action.[15]

Henry Medical contends the settlement and release did not trigger the running of the limitation period. It argues the release did not "finally determine" liability because Integon and Helms expressly denied liability in the release. But the hospital's lien was on Slaughter's cause of action against Helms. Liability in that action was avoided permanently by the settlement and release. No further action by Slaughter against Helms lies because Slaughter completely relinquished any and all "claims, demands, rights, and causes of action of whatsoever kind and nature, arising from [the accident]. . . ."

The hospital also contends there was no final determination of liability because the release was a limited release made pursuant to OCGA § 33-24-41.1. The hospital supports this claim with neither argument nor citation of authority. Further, releases authorized by that section are limited only in that the release of one possibly liable insurer does not release other carriers providing coverage or other tortfeasors and their carriers.[16] That limitation does not apply here.

Henry Medical's argument that this result would be unfair if the lienholder had no notice of the settlement does not fit the facts. Henry Medical had notice that Integon settled with Slaughter over six months before the deadline to file suit.

---

[13] Compare *Hosp. Auth. &c. of Augusta v. Boyd*, supra (hospital has no cause of action under lien law against the patient who incurred the hospital expenses).

[14] OCGA § 44-14-473 (a).

[15] See *Dept. of Med. Assistance v. Hallman*, 203 Ga. App. 615 (417 SE2d 218) (1992) (limitation on foreclosure of hospital lien is one year from settlement).

[16] OCGA § 33-24-41.1 (d).

3. As to the remaining count, the hospital alleges that Integon and Slaughter "conspired with one another to settle [Slaughter's] claim against Defendant, Integon's insured, without the knowledge and consent of [the hospital]," prejudicing the hospital. Essentially, Integon argues that once it exhausted its full policy limits settling Slaughter's claim, it owed no further duty to its insured and is therefore not subject to suit by the hospital.

Such a fraud claim, similar to a claim of fraudulent conveyance, might arise if Integon were a debtor of the hospital. But it is not.[17] It owed no contractual duty to the hospital. Further, because Slaughter had no direct claim against Integon, Integon owed no duty to provide the hospital with notice of its settlement with Slaughter at or before the time payment was made.

*Judgment reversed. Pope, P. J., and Ruffin, J., concur.*

DECIDED NOVEMBER 3, 1998 — 

*Smith, Howard & Ajax, James T. Brieske, Kimberly L. Moore, Joseph P. Hewes*, for appellant.

*Meadows & Associates, Warren R. Power, Robert M. Lewis, Jr., Michael A. Gabel*, for appellee.