**FIRST DIVISION
PHIPPS, C. J.,
ELLINGTON, P. J., and MCMILLIAN, J.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**January 16, 2015**

# In the Court of Appeals of Georgia

A14A1707. KENNESTONE HOSPITAL, INC. v. THE
TRAVELERS HOME AND MARINE INSURANCE CO.

MCMILLIAN, Judge.

Appellant Kennestone Hospital, Inc. d/b/a WellStar Kennestone Hospital

("Kennestone") brought suit against The Travelers Home and Marine Insurance

Company ("TH&M") to enforce its hospital lien for medical treatment and services

provided to Wanderson B. Silva following a motor vehicle collision[1] with TH&M's

insured, Deborah M. Chasin. TH&M moved for summary judgment on the basis that

Kennestone failed to comply with the procedure set out in OCGA § 44-14-471 for

perfecting a medical services lien, and Kennestone filed a cross-motion for summary

judgment, contending that it had in fact satisfied all requirements to perfect its lien,

[1] Silva was riding a motorcycle at the time of the collision and suffered significant injuries.

and that, in any event, any defects in perfecting its lien were irrelevant in light of the fact that TH&M had actual notice of the lien. Following a hearing, the trial court granted summary judgment to TH&M, and Kennestone filed a timely appeal from that order. As more fully set forth below, we now affirm.

1. We start with the pertinent statutory framework. Pursuant to OCGA § 44-14-470 (b), hospitals and other designated medical providers

> shall have a lien for the reasonable charges for hospital . . . care and treatment of an injured person, which lien shall be upon any and all causes of action accruing to the person to whom the care was furnished or to the legal representative of such person on account of injuries giving rise to the causes of action and which necessitated the hospital . . . care[.]

The method for perfecting a hospital or other medical lien is set out in OCGA § 44-14-471 (a), and requires the lienholder to

> (1) . . . provide written notice to the patient and, to the *best of the claimant's knowledge,* the persons, firms, corporations, and their insurers claimed by the injured person or the legal representative of the injured person to be liable for damages arising from the injuries . . . . Such notice shall be sent to all such persons and entities by first-class and certified mail or statutory overnight delivery, return receipt requested[.] (emphasis supplied).

After the notice is sent and within the specified time period, the lienholder

> (2) [s]hall file in the office of the clerk of the superior court of the county in which the hospital . . . is located and in the county wherein the patient resides, if a resident of this state, a verified statement setting forth the name and address of the patient as it appears on the records of the hospital . . .; the name and location of the hospital . . . ; the dates of admission and discharge of the patient therefrom . . .; and the amount claimed to be due for the hospital . . . medical practice care.

Id.

Lastly, section (b) of OCGA § 44-14-471 provides, with certain exceptions discussed in Division 2, that a medical services lien that is not perfected in accordance with paragraphs (1) and (2) of section (a) is unenforceable.[2]

Pertinent to our consideration of the issues raised in this appeal, the record shows Silva was admitted to Kennestone on March 2, 2011, for treatment of serious injuries he sustained in the collision with Chasin, and that he was discharged on March 20, 2011, after having incurred substantial hospital bills. Pursuant to OCGA § 44-14-471, on April 28, 2011, Kennestone sent Silva a notice that it intended to file

---

[2] We note also that a validly perfected lien may be enforced against a person or entity liable for the damages of the patient or that person or entity's insurer, despite the existence of a release or covenant not to sue between the patient and tortfeasor as provided in OCGA § 44-14-473.

3

a hospital lien. Kennestone sent the notice via certified mail, return receipt requested as provided for in the statute, but the return receipt was returned with a notation that it had been "unclaimed."

Also on that date, Kennestone sent a Notice of Intent via certified mail, return receipt requested, to "Travelers" at "Caller Service 1816, Alpharetta GA 30023." This notice referenced Silva, the date of the accident and the claim number assigned to Silva's claim against Chasin, but did not contain any notation identifying TH&M's insured or the name of the claims adjuster handling the claim. However, the return receipt, which was signed by an unidentified person at the delivery address, contained an additional notation to "Marsha," and the record shows that TH&M claims adjuster Marsha Corbitt had been assigned to handle Silva's claim against Chasin. According to Corbitt's affidavit, which was submitted in support of TH&M's motion for summary judgment, Chasin was insured by TH&M, not "Travelers," and Corbitt's correct mailing address at TH&M was Caller Service # 1817, not Caller Service #1816 as stated in Kennestone's Notice of Intent.

Corbitt further averred that she received a *Holt*[3] demand from Silva's attorney on May 16, 2011, and that following several days of discussion, Silva's *Holt* demand

---

[3] *Southern Gen. Ins. Co. v. Holt*, 262 Ga. 267 (416 SE2d 274) (1992).

4

was accepted and his claim was settled for the policy limits. On May 19, 2011, Corbitt sent Silva's attorney a proposed limited release, which specifically obligated Silva to satisfy any outstanding medical expenses,[4] and Silva executed the release on May 24, 2011 and returned it to Corbitt on May 25, 2011. Corbitt averred that she was not informed that there were any outstanding hospital liens during her discussions with Silva's attorney, Kennestone's Notice of Intent had not been uploaded in TH&M's computer system at the time the release was executed, and prior to receiving a letter from Kennestone's attorney on January 20, 2012,[5] she had no "documentation or other information" that Kennestone had filed a hospital lien or that Silva had failed to pay his hospital bills as required by the limited release.

Based on this and other evidence of record, the trial court found that Kennestone had failed to perfect its lien as required by OCGA § 44-14-471 (a) (1). In so ruling, the trial court made a specific finding that Kennestone had failed to serve Chasin, as the person alleged to be responsible for the damages arising from the patient's injuries, as required by OCGA § 44-14-471 (a), and that it had failed to

---

[4] The release listed numerous possible medical provider lienholders, including Kennestone.

[5] The letter was dated January 18, 2012.

5

sufficiently designate the proper insurer by sending the notice to "Travelers." Further, the trial court found that the exception contained in OCGA § 44-14-471 (b) permitting enforcement of an invalid hospital lien in the case of actual notice does not, on its face, apply to insurers, and thus Kennestone's lien remained unenforceable against TH&M, warranting summary judgment in its favor. Kennestone now challenges these rulings.

(a) Kennestone first challenges the trial court's finding that it failed to designate the proper insurer in the notice it sent to "Travelers," arguing that its notice to Travelers was sent to the "best of the [its] knowledge," OCGA § 44-14-471 (a) (1), which is all the statute requires. In support of this contention, Kennestone argues that "Travelers" is routinely used to refer to a variety of insurance entities, including TH&M, under the Travelers "umbrella," Kennestone has a documented history of sending unchallenged notices to "Travelers" using the same address and call number that it used in the present case, and the address it used is the one listed on the company's automobile claims center website. Accordingly, Kennestone argues that by invalidating the lien, the trial court has imposed requirements which are not imposed by the statute, namely that the lienholder acquire the full proper name of the

6

insurer prior to sending a notice of intent and that the insurer actually receive the notice.

We agree with Kennestone that the phrase to the "best of the claimant's knowledge" indicates that a notice of lien need not be perfect in all respects. However, we disagree with Kennestone to the extent that it appears to argue that the lienholder can merely rely on past (and apparently incorrect) practices to garner the information it needs to send the notice. Rather, we find that use of the phrase "best of" to describe the lienholder's knowledge imposes a requirement on the lienholder to exercise at least some degree of diligence in acquiring the information necessary to send the notice. For instance, in this case it appears that Kennestone knew the claim number and at least the first name of the claims adjuster, yet there is nothing in the record to suggest that Kennestone took any additional steps to verify the name of the insurer or to determine the adjuster's proper mailing address prior to sending the notice, or that it attempted to ascertain the full name of the claims adjuster and list it on both the return receipt, which listed only her first name, or the notice itself, which did not list her at all. Thus, contrary to Kennestone's argument on appeal, we do not view the trial court's order as imposing anything more than the notice be sent to the best of the claimant's knowledge.

However, it is not necessary in this case for us to decide precisely what level of diligence the statute requires or whether this case presents a question of fact concerning whether Kennestone exercised its best knowledge in sending notice to Travelers. As the trial court also noted, it is undisputed that Kennestone failed to send any notice at all to Chasin, although OCGA § 44-14-471 (a) (1) clearly requires the claimant to send such notice to "the persons . . . claimed by the injured person . . . to be liable for the damages arising from the injuries." Accordingly, this failure alone invalidates the lien.

But Kennestone argues that summary judgment should not be granted on this basis, because TH&M did not produce any evidence to show that Kennestone was aware of Chasin's identity, again pointing to the language in OCGA § 44-14-471 (a) (1) that requires only that the lienholder send notice to the best of its knowledge. However, as TH&M points out, once it demonstrated that Kennestone failed to send notice to the insured, it was incumbent upon Kennestone to show that this failure should not invalidate its lien, and if the reason it did not send the insured notice was because it was unaware of her identity, it should have put forth some competent

evidence to support that assertion.[6] E.g., *Cowart v. Widener*, 287 Ga. 622, 623 (1) (697 SE2d 779) (2010); *Lau's Corp., Inc. v. Haskins*, 261 Ga. 491, 491 (405 SE2d 474) (1991).

However, Kennestone further posits that it would have been improper to send the insured notice even if it knew her identity because TH&M has never admitted, and indeed has specifically denied, liability on her behalf. To further support this contention, Kennestone points to OCGA § 44-14-476, which provides that a medical provider lienholder does not have an independent right of action to determine the liability for the injuries sustained to its patient. But this argument is clearly specious. OCGA § 44-14-471 (a) (1) requires the lienholder to send notice to the person or entity that the *injured person or his or her legal representative* claims to be liable for the patient's damages, and the insurer's stance on its insured's liability or responsibility to pay those damages is irrelevant; indeed, it would be safe to assume that in most cases the insurer will take the stance taken by TH&M in this case and either deny, or at least refuse to admit, the liability of its insured. Likewise, the fact

---

[6] This showing would seem to be particularly apt to explain how Kennestone might have acquired the name, or at least part of the name, of the insurance carrier, the claim number, and the name, or at least part of the name, of the claims adjuster but yet allegedly remained unaware of the identity of the insured.

that a medical provider lienholder does not have an independent cause of action to determine liability for a patient's injuries has nothing to do with, and does not eviscerate, the lienholder's obligation to send notice to the person the injured party claims to be liable for his or her injuries. Accordingly, we affirm the trial court's finding that Kennestone failed to perfect its lien because it did not serve its Notice of Intent as required by OCGA § 44-14-471 (a) (1).

2. However, relying on OCGA § 44-14-471 (b), Kennestone also argues that even assuming it did not meet the notice requirements contained in OCGA § 44-14-471 (a) (1), its lien was nevertheless enforceable against TH&M because TH&M had actual notice of the lien.

In pertinent part, OCGA § 44-14-471 (b) provides as follows:

[t]he failure to perfect such lien by timely complying with the notice and filing provisions of paragraphs (1) and (2) of subsection (a) of this Code section shall invalidate such lien, *except as to any person, firm, or corporation liable for the damages,* which receives prior to the date of any release, covenant not to bring an action, or settlement, actual notice of a notice and filed statement made under subsection (a) of this Code section, via hand delivery, certified mail, return receipt requested, or statutory overnight delivery with confirmation of receipt.

10

(Emphasis supplied.) Thus, it is true that, as Kennestone argues, OCGA § 44–14-471

(b) provides an exception to the unenforceability of a lien that has not been properly

perfected in accordance with subsection (a). However, as the trial court found, that

exception applies only to the person, firm, or corporation liable for the damages, and

does not, by its terms, apply to insurers. See *Integon Indem. Corp. v. Henry Medical*

*Center, Inc.,* 235 Ga. App. 97, 100 (1) (b) (508 SE2d 476) (1998) (omission of the

insurer in the prior version of OCGA § 44-14-473 which contained the language

"against the person, firm, or corporation liable for damages" meant legislature did not

intend to include the insurer); see also OCGA § 44-14-473 (amended at Ga. L. 2002,

p. 1429, § 4 to add "insurers"); OCGA § 44-14-471 (a) (1) (requiring notice to the

person or entity liable for the damages "and their insurers"). Thus, OCGA § 44-14-

471 (b) does not save Kennestone's improperly perfected lien against TH&M, and the

trial court did not err by refusing to enforce the lien against TH&M on this basis.

Accordingly, the trial court's order granting TH&M's motion for summary judgment

is affirmed.

*Judgment affirmed. Phipps, C. J., and Ellington, P. J., concur*.