**FIFTH DIVISION**
**RICKMAN, C. J.,**
**MCFADDEN, P.J. and SENIOR APPELLANT JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 4, 2022**

# In the Court of Appeals of Georgia

A21A1714.  PHOEBE  SUMTER  MEDICAL  CENTER  v. GOVERNMENT EMPLOYEES INSURANCE COMPANY.

RICKMAN, Chief Judge.

Phoebe Sumter Medical Center (the "Medical Center") brought suit against Government Employees Insurance Company ("GEICO") to enforce its hospital lien for medical treatment and services it provided to Cynthia Frederick following a motor vehicle collision between Frederick and GEICO's insured. GEICO moved for summary judgment on the basis that the Medical Center failed to perfect its lien in accordance with the procedures set forth in Georgia's hospital lien statute, OCGA § 44-14-470 et seq., because it did not attempt to serve a notice of intent on GEICO or GEICO's insured. The trial court granted GEICO's motion, and the Medical Center timely appealed from that order. For the following reasons, we conclude that the trial court erred by granting summary judgment to GEICO and, therefore, reverse.

For context, the relevant statutory framework governing hospital liens under Georgia law is as follows. Pursuant to OCGA § 44-14-470 (b), hospitals and other designated medical providers

> . . . shall have a lien for the reasonable charges for hospital . . . care and treatment of an injured person, which lien shall be upon any and all causes of action accruing to the person to whom the care was furnished or to the legal representative of such person on account of injuries giving rise to the causes of action and which necessitated the hospital . . . care[.]

In order to perfect a hospital lien, the lienholder is required to

> provide written notice to the patient and, *to the best of the claimant's knowledge*, the persons, firms, corporations, and their insurers claimed by the injured person or the legal representative of the injured person to be liable for damages arising from the injuries. . . . Such notice shall be sent to all such persons and entities by first-class and certified mail or statutory overnight delivery, return receipt requested[.]

(Emphasis supplied.) OCGA § 44-14-471 (a) (1).

After the notice has been sent and within certain statutorily defined time periods, the lienholder must then file the lien and a verified statement containing the name of the patient and other specific information in the superior court of the county in which the hospital is located and the county in which the patient resides. See

2

OCGA § 44-14-471 (a) (2). Significantly, with certain exceptions not applicable here, the failure to perfect a lien by timely complying with the notice and filing provisions set forth above shall invalidate the lien. See OCGA § 44-14-471 (b).

With respect to the lien at issue in this case, the pertinent facts are not in dispute. In July 2014, Frederick sustained injuries after being involved in a motor vehicle accident with GEICO's insured, who was the alleged tortfeasor. The accident occurred on the Flint River Bridge in Macon County, which is on the line between the City of Montezuma and the City of Oglethorpe. The City of Oglethorpe Police Department responded to the accident. Frederick was transported to the Medical Center via ambulance, treated for her injuries, then released.

After attempting unsuccessfully to contact Frederick by telephone, in August 2014, the Medical Center sent Frederick via certified mail, return receipt requested, a notice of its intent to file a hospital lien for the cost of services rendered. The return receipt was signed as the notice having been received.[1]

In an effort to determine the identity of the alleged tortfeasor who caused Frederick's injuries and/or the tortfeasor's insurer, a representative working on behalf of the Medical Center conducted an internet search to locate the police report on a

---

[1] The name signed on the return receipt does not appear to be that of Frederick.

3

website with which some, but not all, Georgia law enforcement agencies share information. No police report on Frederick's accident was located. For reasons unclear in the record, the representative then sent a letter requesting the police report to the Sumter County Sheriff's Office, although it is undisputed that the accident did not occur in Sumter County and that the Sumter County Sheriff's Office would not have played any role in the response. No request for the accident report was ever sent to the police departments of the City of Oglethorpe or the City of Montezuma, either of which, based on the location of the accident, could have responded to the scene.

On August 21 and August 22, 2014, the Medical Center filed hospital liens in Macon County and Sumter County, respectively.

In September 2014, Frederick's attorney sent a time-limited demand for settlement to GEICO, demanding the limits of its insured's policy in order to resolve any claim accruing to Frederick for her bodily injury resulting from the accident. On October 6, GEICO accepted the demand and a settlement was reached. Unaware of the lien, GEICO mailed payment directly to Frederick.

In August 2015, the Medical Center filed the instant lawsuit against GEICO, seeking to recover the amount of its hospital lien in addition to the expenses of litigation and attorney fees. GEICO moved for summary judgment, asserting that the

4

Medical Center failed to perfect its lien because it did not comport with the statutory requirement to provide notice "to the best of [its] knowledge" in accordance with OCGA § 44-14-471 (a) (1). The Medical Center maintained, on the other hand, that it met the standard contained in the statute, that GEICO's motion should be denied, and that summary judgment should be granted in the Medical Center's favor.

The trial court granted summary judgment to GEICO. In so doing, the court concluded the Medical Center failed to put forth sufficient effort to identify the alleged tortfeasor and his insurer, GEICO, and to provide them both with a notice of intent so as to perfect its lien. This appeal followed.

The term "to the best of the claimant's knowledge" is not defined in the statute, and the challenge for the courts, at both the trial and the appellate level, is to determine what level of effort satisfies that standard. In its order granting summary judgment to the Medical Center, the trial court relied on this Court's opinion of *Kennestone Hosp. v. Travelers Home and Marine Ins. Co.*, 330 Ga. App. 541 (768 SE2d 519) (2015). There, we held that the hospital failed to comply with OCGA § 44-14-471 (a) (1) as a matter of law because it did not send a notice of intent to the alleged tortfeasor and, once that fact was demonstrated, it neglected to explain the failure or otherwise put forth any evidence that it did not know the tortfeasor's

5

identity. See id. at 544-545 (1) (a). In addition to that evidentiary void, there was affirmative evidence that the hospital failed to properly use the information in its possession when attempting to notify the alleged tortfeasor's insurer, instead relying on "past (and apparently incorrect) practices." See id. at 544 (1) (a). In our opinion, we noted that, "the phrase 'best of' to describe the lienholder's knowledge imposes a requirement on the lienholder to exercise at least some degree of diligence in acquiring the information necessary to send the notice." Id. at 544 (1) (a).

The facts in the instant case present a more challenging question of whether the Medical Center exercised its best knowledge in attempting to serve the necessary parties. The Medical Center established that it did not know the identity of the alleged tortfeasor and/or his insurer and that it took some affirmative steps to discover that information – namely, it attempted to contact the patient both by telephone and in writing, it conducted an online search, and it sent a request for the accident report, albeit to the wrong police department. Yet the Medical Center failed to use the actual location of the accident, which was provided in the ambulance report and contained in its records, in order to request the report from one of the police departments most likely to have responded to the scene.

In order to justify a grant of summary judgment, the moving party must demonstrate that there is no genuine issue of material fact in the record and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. See OCGA § 9-11-56 (c). The court is not permitted to weigh the evidence, as that task falls exclusively within the province of a factfinder. See *Donastorg v. Rainbow USA, Inc.*, 342 Ga. App. 215, 219 (2) (802 SE2d 425) (2017) ("We must remember that it is the jury, not the court, which is the fact-finding body. . . . The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable.") (citation and punctuation omitted). This is particularly true when faced with a standard, such as a lienholder's "best . . . knowledge," the concept of which is somewhat abstract and the definition of which is not otherwise set forth in the statute.

Here, GEICO established that the Medical Center failed to effectively use all of the information in its records to affirmatively obtain the police report and identify the alleged tortfeasor and his insurer. The Medical Center presented evidence that it did put forth some effort, albeit unsuccessfully, to obtain that information. Faced with these facts, we cannot say, as a matter of law, that the Medical Center failed to act "to the best of [its] knowledge" so as to satisfy the requirements of OCGA § 44-14-471

7

(a) (1). Nor can we say, as a matter of law, that it did so. Rather, this case presents a jury question as to whether the Medical Center exercised its best knowledge when providing notice of its intent to file a lien. Accordingly, we must reverse the trial court's grant of summary judgment to GEICO. See OCGA § 9-11-56 (c).

*Judgment reversed. Senior Appellate Judge Herbert E. Phipps concurs, and McFadden, P.J. concurring fully and specially*.

8

A21A1714. PHOEBE SUMTER MEDICAL CENTER v. GOVERNMENT EMPLOYEES INSURANCE COMPANY.

MCFADDEN, Presiding Judge, concurring fully and specially.

I concur fully with the majority's opinion. I agree that whether the Medical Center provided notice "to the best of [its] knowledge" in accordance with OCGA § 44-14-471 (a) (1) is a question for the factfinder. I write separately to address our decision not to specify the standard to be applied by the factfinder. That question must be answered to properly resolve this case. But we should not answer it in the first instance.

In *Kennestone Hosp. v. Travelers Home & Marine Ins. Co.*, 330 Ga. App. 541, 544 (1) (768 SE2d 519) (2015), we addressed the meaning of the phrase "to the best of the claimant's knowledge," holding that the use of the phrase "best of" to describe the lienholder's knowledge imposes upon the lienholder the requirement "to exercise at least some degree of diligence in acquiring the information necessary to send the notice." Id. But we refrained from deciding "precisely what level of diligence the

statute requires," because Kennestone, the lienholder, had failed to put forth any competent evidence to create a fact question on the issue of diligence. Id. at 545 (1).

After *Kennestone Hosp. v. Travelers*, 330 Ga. App. at 541, we decided *Allstate Fire & Cas. Ins. Co. v. Kennestone Hosp.*, 348 Ga. App. 335 (822 SE2d 832) (2019). But there, again, we did not define the level of diligence the statute's "best of knowledge" language requires because "[t]he parties stipulated that Kennestone exercised due diligence." Id. at 337. In other words, they stipulated that Kennestone had exercised the level of diligence due. Therefore, we held, the record supported "the trial court's conclusion that 'because Kennestone put forth a diligent effort . . . , Kennestone met OCGA § 44-14-471 (a) (1)'s "best of knowledge" standard in providing notice to all required parties and therefore properly noticed all required parties.'" Id.

So we have yet to define the level of diligence due to meet the best-of-the-claimant's-knowledge standard. It remains an issue of first impression. But here, the parties did not argue in the trial court the level of diligence required, and they do not argue it here. They carefully rely on the language of *Kennestone Hosp. v. Travelers*, 330 Ga. App. at 544 (1), that "some degree of diligence" is required, and then argue about whether Phoebe Sumter exercised "some degree of diligence" or no diligence

2

at all. The trial court did not decide the issue either, ruling that no genuine issues of material fact remained as to whether Phoebe Sumter exercised "at least some degree of diligence in acquiring the information necessary to send the notice[.]"ÕöÖStÜúng

With these considerations in mind—that it's an issue of first impression, that the parties do not argue the issue, and that the trial court did not rule on the issue—it is premature to specify in this opinion the requisite level of diligence. Not until the issue is "fairly presented in the court below" and ruled upon by that court should we consider it. *Georgia-Pacific v. Fields*, 293 Ga. 499, 504 (2) (748 SE2d 407) (2013) ("A grant of summary judgment must be affirmed if it is right for any reason, whether stated or unstated in the trial court's order, *so long as the movant raised the issue in the trial court and the nonmovant had a fair opportunity to respond*.") (citation and punctuation omitted; emphasis in original). "We are a court for the correction of errors of law committed by the trial court . . . and we will not consider issues . . . which were not raised and determined by the trial court." *Williams v. State*, 277 Ga. App. 106, 108 (2) (625 SE2d 509) (2005). We "are not authorized to issue an advisory opinion about a potential error a trial court may make in the future." *Wright v. Waterberg Big Game Hunting Lodge Otjahewita (Pty), Ltd.*, 330 Ga. App. 508, 512 (4) (767 SE2d 513) (2014).

3

I note that the "to the best of the claimant's knowledge," language has existed in the statute since at least 1953. See Ga. L. 1953, p. 105, § 2. Yet the only published opinions addressing that language are the two *Kennestone* cases. The Indiana Court of Appeals has addressed the meaning of "best of knowledge" language in a hospital lien statute. In *Bd. of Trustees of Clark Mem. Hosp. v. Collins*, 665 NE2d 952, 955 n.1 (Ind. Ct. App. 1996), the court concluded that a Hospital Lien Act, similar to Georgia's and including "best of the [claimant's] knowledge" language,

> requires that, in order to perfect its lien, a hospital must employ *reasonable diligence* . . . in discovering the identity of the tortfeasor and the patient's attorney and providing such persons actual notice. . . . [T]he language of the Act implies that the Hospital must do more than merely rely upon the standard information provided by the patient upon admission. Whether a hospital could have, with the exercise of *reasonable diligence*, discovered and provided notice to the tortfeasor and the patient's attorney will ordinarily be questions of fact for the fact-finder.

Id. (Emphasis supplied.) See also OCGA § 51-1-2 (defining "ordinary diligence" in the tort context as "that degree of care which is exercised by ordinarily prudent persons under the same or similar circumstances"). Cf. *Shelby County Health Care Corp. v. Baumgartner*, Case No. W2008-01771-COA-R3-OCGA §, 2011 Tenn. App.

4

LEXIS 24, at \*38-39 (Ct. App. Jan. 26, 2011) (the "best of knowledge" language in Tennessee's Hospital Lien Act does not impose a duty to use reasonable diligence but instead refers to the hospital's actual knowledge at the time the lien is filed). Other courts have held, in contexts other than hospital lien statutes, that the "best of knowledge" standard means the exercise of reasonable diligence. See, e.g., *United States v. United Healthcare Ins. Co.*, 848 F3d 1161, 1175 (I) (A) (1) (9th Cir. 2016); *In re Rios*, 476 B.R. 685, 689 (III) (1) (a) (Bankr. D. Mass. 2012).

The level of diligence required must be decided by the trial court in the first instance. Resolution of the issue in this case would be advisory, so we cannot resolve it today.